UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PRIORITY ENVIRONMENTAL SOLUTIONS, INC., <br><br> Plaintiff, <br> v. <br><br> THE STEVENS COMPANY LIMITED, <br><br> Defendants. | Case No. 15-CV-871-JPS <br><br><br> ORDER |

   This action, originally filed in the Waukesha County Circuit Court on June 25, 2015, was removed to this court on July 20, 2015, by the defendant, The Stevens Company Limited ("Stevens"). (Docket #1) On August 20, 2015, Stevens filed a motion to dismiss the complaint for lack of personal jurisdiction. (Docket #7). On September 1, 2015, the plaintiff, Priority Environmental Solutions, Inc. ("PES"), filed a motion for discovery limited to jurisdiction and to extend time to respond to Stevens's motion to dismiss. (Docket #15). On September 18, 2015, PES filed a stipulation regarding jurisdictional discovery (Docket #24) along with a motion to withdraw its previous motion for discovery (Docket #23).

   On November 4, 2015, PES filed its response to the motion to dismiss, (Docket #31), and on November 18, 2015, Stevens filed its reply brief (Docket #35). The matter is now fully briefed and ready for disposition. As discussed more thoroughly below, the Court finds that Stevens is not subject to personal jurisdiction in Wisconsin and, thus, the Court will grant Stevens's motion to dismiss.

1. FACTUAL BACKGROUND[1]

PES is a Wisconsin corporation based in Pewaukee. (Compl. ¶ 1). Stevens is a Canadian corporation with its headquarters located in Brampton, Ontario. (Declaration of Brian Godwin. ¶ 4, Docket #9 ("Godwin Decl.")). PES manufactures sanitation products used in the medical community and Stevens is a distributor of medical supplies and equipment. (Compl. 10; (J. Stevens Dep. at 11)).[2]

Stevens does not maintain a place of business in Wisconsin and does not sell, promote, or demonstrate goods or services to customers or other persons in Wisconsin. (Godwin Decl. ¶ 4). Stevens does not lease or own any real or personal property located in Wisconsin. (Godwin Decl. ¶ 5). Stevens does not maintain a Wisconsin telephone number, mailing address, bank account, or taxpayer identification number. (Godwin Decl. ¶ 6).

A third party, the Canadian Department of National Defense ("Canadian DND"), introduced PES to Stevens on July 13, 2013, through an email. Jacqueline Doucette, a customer service supervisor at Canadian DND, sent an email inquiry to Laurie Marquis of Stevens and to Linda Wise of Cardinal Health Canada, another Canadian product distributor. (Laurie Marquis Declaration ¶ 7, Docket #10 ("Marquis Decl.")). Ms. Doucette explained that the Canadian DND was interested in a PES manufactured medical drape product and asked whether Stevens or Cardinal Health would

---

[1] The Court notes that at the motion to dismiss stage, the Court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the [record] in favor of the plaintiff." *Tamburo v. Dworkin,* 601 F.3d 693, 700 (7th Cir. 2010).

[2] Stevens's corporate designee, Jeffrey Peter Stevens, testified on October 16, 2015, pursuant to Fed. R. Civ. P. 30(b)(6). (Wegryzn Decl., Ex. A). For simplicity, the Court will refer to this deposition as simply the "J. Stevens Dep."

be interested in working with PES to resell a smaller amount of PES's drapes to the Canadian DND. (Marquis Decl. ¶ 4). Ms. Doucette copied Elizabeth Kemp of PES on the email. (Marquis Decl. ¶ 3). Neither Ms. Marquis nor anyone else at Stevens responded to Ms. Doucette's inquiry. (Marquis Decl. ¶ 5).

PES initiated contact directly with Stevens on January 22, 2014, approximately six months after the email introduction. Ms. Kemp called Ms. Marquis regarding the possibility of Stevens becoming a distributor for PES's medical drape product, called the MedMat, in Canada. (Marquis Decl. ¶ 6). Ms. Kemp requested a follow-up phone call with Ms. Marquis's boss, Brian Godwin. (Marquis Decl. ¶ 6). That same day, Ms. Marquis followed up on the conversation in an email to Ms. Kemp, and stated that she was "looking forward to doing business with [her] in the near future." (Kemp Decl., Ex. B).

On February 5, 2014, Ms. Kemp emailed Stevens a draft version of a document entitled "Mutual Confidentiality and Non-Disclosure Agreement" ("NDA").[3] (Wegrzyn Decl., Exs. D & E). On February 11, 2014, Mr. Godwin emailed Ms. Kemp to note he would return an executed version of the NDA that day. (Wegrzyn Decl., Ex. F). Later that day, Mr. Godwin sent Ms. Kemp an executed version of the NDA (Wegrzyn Decl., Ex. E). The NDA explicitly stated that Wisconsin law governed the agreement. (Wegrzyn Decl., Ex. E).

On February 22, 2014, Ms. Marquis and Mr. Godwin had a telephone conference with Ms. Kemp regarding their potential distributor relationship. (Marquis Decl. ¶ 7). During the call, Ms. Kemp explained that the Canadian

---

[3]It is unclear what, if any, communications took place between PES and Stevens from the January 5, 2014 email until February 5, 2014. PES states "[a]s the discussions between the two sides continued...," (Pl's Opp. at 5), however, neither party provides any facts as to specific details of these communications.

DND only wanted to purchase small quantities of the Medmat, because the Canadian DND used approximately only 400 units per year and that the product had a limited three-year shelf life. (Marquis Decl. ¶ 8).

On February 19, 2014, Ms. Kemp emailed Mr. Godwin and Ms. Marquis a draft agreement entitled "Priority Environmental Solutions, Inc. Reseller Agreement" ("Reseller Agreement"). (Wegrzyn Decl., Ex. J). On February 21, 2014, Mr. Godwin responded that he received the agreement and would get back to Ms. Kemp the following Monday. (Wegrzyn Decl., Ex. K at 2). Stevens made revisions to the draft agreement regarding insurance (J. Stevens Dep. at 100), and on March 10, 2014, Mr. Godwin executed the Reseller Agreement on behalf of Stevens.[4] (Godwin Decl., Ex. A).

The Reseller Agreement called for a twelve-month term and contemplated an additional twelve-month term subject to an agreement by the parties of a mandatory minimum sales level. (Compl., Ex. 1, Docket #1-1). The mandatory minimum sales portion of the agreement, however, was left blank. (Compl., Ex. 1, Docket #1-1). Section 16.1 of the Reseller Agreement provided that it was to be governed by Wisconsin law. (Compl., Ex. 1, Docket #1-1). At the time Stevens executed the Reseller Agreement, it knew that PES was a Wisconsin company and believed that PES would be shipping its products from Wisconsin. (J. Stevens Dep. at 49). Notably, the Reseller Agreement, however, did not include any specific information as to the location from which PES would ship its products. (*See* Compl., Ex. 1).

The Reseller Agreement provided that Stevens was required to place an initial stocking order within ninety days. (Compl., Ex. 1). On April 9, 2014,

---

[4] It appears that Mr. Godwin did not provide PES with a copy of the Reseller Agreement until March 25, 2014. (Wegrzyn Decl., Ex. M).

Stevens assured PES that its initial stocking order would be placed the following day. (Kemp. Decl., Ex. C). Stevens's purchasing department informed Mr. Godwin that it required a proforma invoice from PES before Stevens could issue any advance payment. (Godwin Decl. ¶ 12).

On May 20, 2014, Ms. Kemp sent Mr. Godwin a proforma invoice that stated "FOB China and Distributor is responsible for shipment costs." (Godwin Decl., Ex. B). This was the first time that Stevens learned that PES's products were to be manufactured and shipped from China. (Godwin Decl. ¶ 13). This detail was essentially the breaking point of Stevens's and PES's relationship, and on September 23, 2014, Mr. Godwin emailed Ms. Kemp that the FOB China was a "game ender" for Stevens and that they "were not the right company for [PES] right now." (Kemp. Decl., Ex. E).

PES alleges that as a direct result of Stevens's breach of the Reseller Agreement, PES has lost the opportunity to make substantial sales of its products to the Canadian DND and other customers, and that is has suffered significant reputational damage with prospective customers. (Compl. ¶ ¶ 23-24).

2.  LEGAL STANDARD

Rule 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Fed. R. Civ. P. 12(b)(2). "The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). On a motion challenging personal jurisdiction, the Court may "receive and weigh" affidavits and other evidence outside the pleadings. *See Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court does not hold an evidentiary hearing to resolve factual disputes, as is the case here, the plaintiff "need only make out a prima facie case of personal

jurisdiction." *See N. Grain*, 743 F.3d at 491. On a motion pursuant to Rule 12(b)(2), the Court will "resolve factual disputes in the plaintiff's favor." *Id.* The Court, however, also "accept[s] as true any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU–Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

Personal jurisdiction refers to a court's "power to bring a person into its adjudicative process." BLACK'S LAW DICTIONARY 930 (9th ed. 2009). "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). This is technically a two-part analysis: the Court must determine whether Wisconsin's state courts would have jurisdiction under the state's long-arm statute, Wis. Stat. § 801.05, and whether personal jurisdiction would comport with principles of due process. *See Purdue*, 338 F.3d at 779. But Wisconsin's long-arm statute is liberally construed in favor of conferring jurisdiction to the maximum extent allowable under principles of due process. *See, e.g., Kopke v. A. Hartrodt S.R.L.*, 2001 WL 99, ¶ 10, 245 Wis.2d 396, 629 N.W.2d 662; *Fabio v. Diversified Consultants, Inc.*, No. 13–CV–524, 2014 WL 713104 at *2 (W.D. Wis. Feb. 25, 2014). As such, the Court can easily collapse the personal jurisdiction issue into one question: whether personal jurisdiction over Stevens comports with principles of due process.

The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due-process clause, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985), which "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

Page 6 of 18

Case 2:15-cv-00871-JPS   Filed 12/18/15   Page 6 of 18   Document 37

relations,'" *Id.* at 471–72 (quoting *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). A forum state's courts may not exercise personal jurisdiction over a nonconsenting, out-of-state defendant unless the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

There are two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–16 (1984); *see also Hyatt Int'l*, 302 F.3d at 713. Recently, the Supreme Court held that general jurisdiction requires "'affiliations with the State [that] are so "continuous and systematic" as to render [the defendant] essentially at home in the forum State,'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)). If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. Specific jurisdiction, on the other hand, is more limited and exists for controversies that "arise out of" or "relate to" a defendant's forum contacts. *Id.* PES contends that the

Court has both general and specific jurisdiction over Stevens. The Court addresses both jurisdictional theories below.[5]

3. DISCUSSION

Stevens's motion to dismiss argues that it is not subject to either general or specific personal jurisdiction in Wisconsin. (Def's Opening Br. at 5-6, Docket #12). In contrast, PES argues that Stevens's contacts with Wisconsin are sufficient to support either general or specific personal jurisdiction. (Pl's Opp. at 10). The Court will discuss each type of personal jurisdiction separately, and, as detailed below, the Court finds that Stevens's contacts with Wisconsin are insufficient to support either general or specific personal jurisdiction over Stevens.

3.1     General Personal Jurisdiction

General jurisdiction does not depend on any connection between the underlying claim and the forum. *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012). "'A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Id.* (quoting *Goodyear*

---

[5]It is worthy to note that the complexity of personal jurisdiction is intensely fact driven, thus, the Court's analysis will differ from case to case. As a liberty protection enshrined in the Fourteenth Amendment, a finding of personal jurisdiction over a defendant should not turn on a "gotcha" moment of a deposition. As such, an attorney's tongue twisting questions, such as "How many contacts constitutes continuous contact," (Docket #36-2 at 12), provide little, if anything, to inform the Court's analysis. This is certainly not a question that any deponent should be able to answer as it calls for a legal conclusion. And, indeed, the answer to, "How many contacts constitutes continuous contact?," is akin to the well-known Tootsie Pop question, in that the "world may never know." *See* Scientific Endeavors, Tootsie.com, http://www.tootsie.com/howmanylick-experiments (last visited December 15, 2015).

131 S. Ct. at 2851). Where a court has general jurisdiction over a defendant, that defendant may be called into that court "to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010).

Exercising general personal jurisdiction over a defendant can result in severe consequences, and for that reason courts have held that the constitutional requirement for general jurisdiction is "considerably more stringent" than that required for personal jurisdiction. *Abelesz*, 692 F.3d at 654 (quoting *Purdue*, 338 F.3d at 787). "'[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Daimler AG*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853–54). Although courts have clarified that general jurisdiction can be appropriate in more forums than a person's domicile alone, however, that will only be in the exceptional case. *See Daimler AG*, 134 S. Ct. at 761, n.19.

PES argues that Stevens is subject to general personal jurisdiction in Wisconsin because Stevens has regularly purchased significant amounts of medical equipment from multiple Wisconsin-based manufactures. (Pl's Opp. at 19). PES points to 529 separate purchase agreements that Stevens made with Wisconsin-based companies found during the limited jurisdiction discovery period of thee years. The total amounts that Stevens paid Wisconsin-based manufacturers since 2012 exceeds $500,000.00. PES relies on *Shepard Investment International LD v. Verison Communications, Inc.,* 373 F. Supp. 2d 853 (E.D. Wis. 2005), for the proposition that "a non-resident can conduct sufficient businesses to justify general jurisdiction without maintaining a business location in a state or acting through an in-state agent." *Id.* at 863. PES concludes that "Stevens voluntarily chooses to do

regular business in Wisconsin and should reasonably be expected to defend itself in Wisconsin court." (Pl's Opp. at 20). The Court disagrees.

The Court finds that this is nowhere near the "exceptional case," and that Stevens, a Canadian company organized under the laws of Ontario, was not "at home" in Wisconsin to justify general personal jurisdiction. Stevens's purchase agreements with third party Wisconsin companies is insufficient to justify the Court's exercise of general jurisdiction. PES's reliance on case law decided prior to the Supreme Court's guiding language in *Goodyear* and *Daimler AG* and ensuing Seventh Circuit precedent is unpersuasive to the Court's analysis here. More importantly, *Shepard Investment* is factually distinguishable from this case in two significant respects: (1) the *Shepard Investment* defendant's number of contacts with the forum state, business relationships with over 140 Wisconsin banks, and 15,000 Wisconsin shareholders who received numerous mailings from the defendant each year, was substantially more than Steven's contacts with three Wisconsin-based companies in this case; and (2) the *Shepard Investment* defendant engaged in substantial lobbying activities in Wisconsin that reinforced the court's decision for general jurisdiction, which is also not present in this case. *See Shepard Invest.,* 373 F. Supp. 2d at 863.

Stevens's purchases from a few third-party vendors located in Wisconsin for resale in Canada do not rise to the level of being so extensive that Stevens is "at home" in Wisconsin. To hold otherwise, and allow Stevens to be hailed into Wisconsin courts for *any* litigation, arising out of *any* transaction, *anywhere* in the world, would be simply unfair. *See Purdue,* 338 F.3d at 787. As such, the Court finds that Stevens is not subject to general personal jurisdiction in Wisconsin. The Court now turns to discuss PES's remaining option, specific personal jurisdiction.

### 3.2 Specific Jurisdiction

To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must "directly relate to the challenged conduct or transaction." *Tamburo v. Dworkin*, 601 F.3d 693, 701, 710 (7th Cir. 2010) (citing *GCIU–Emp'r Ret. Fund*, 565 F.3d at 1024). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* (citing *Burger King*, 471 U.S. at 472). The exercise of specific jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe*, 326 U.S. at 316).

The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be hailed into court there. *Burger King*, 471 U.S. at 474. This purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on "random, fortuitous, or attenuated contacts," *id.* at 475 (internal quotation marks omitted), but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue, *see Purdue*, 338 F.3d at 780.

> In looking to contacts for purposes of specific jurisdiction,
>
> The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. Crucially, not just any contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." Furthermore, the relation

> between the defendant and the forum "must arise out of contacts that the 'defendant himself' creates with the forum...." Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement.

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), as corrected (May 12, 2014) (quoting *Walden v. Fiore,* ––– U.S. ––––, 134 S. Ct. 1115 (2014); citing *Int'l Shoe*, 326 U.S. at 310; *Keeton v. Hustler Mag .*, *Inc.,* 465 U.S. 770, 775; *Burger King*, 471 U.S. at 475.

With respect to contract disputes, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue,* 338 F.3d at 781 (citing *Burger King*, 471 U.S. at 478). Instead, we conduct a context-sensitive analysis of the contract, examining "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.* (citing *Burger King,* 471 U.S. at 479). So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant has not physically entered it does not defeat personal jurisdiction there. *Burger King*, 471 U.S. at 476. Although even a single act can support the exercise of personal jurisdictions, the Supreme Court has held that personal jurisdiction may exist only so long as the act has a "substantial connection" with the forum state. *See Burger King,* 471 U.S. at 475 n.18.

PES argues that the facts of this case demonstrate a "multitude of actions by Stevens directed at Wisconsin" that allow the Court to exercise specific jurisdiction. (Pl's Opp. at 10). As PES describes them, Stevens's contacts directed at Wisconsin include: (1) Stevens sending the first written communications between the parties; (2) Stevens sent both executed versions of the NDA and the Reseller Agreement to PES in Wisconsin, which

expressly selected Wisconsin as the governing law; and (3) Stevens knew that PES was located in Wisconsin and expected that the products would be shipped from Wisconsin. (Pl's Opp. at 10-11).

Not surprisingly, given the factual-specific nature of personal jurisdiction analysis, both parties were able to cite cases supporting their arguments. Yet, having balanced the factors for and against a finding of specific personal jurisdiction, the Court finds that PES has not met its burden of showing that Stevens purposefully availed itself of the privilege of doing business in Wisconsin such that Sevens should have foreseen being hailed into court here. While the Court could, of course, go on at length describing each and every factual similarity and difference of every case cited by the parties, indeed they are numerous, the Court finds this exercise would not be particularly helpful to its analysis. Instead, the Court finds it more useful to look to recent Seventh Circuit case law describing the boundaries of when specific personal jurisdiction exists and when it does not, and then applying those limits to the facts of this case.

Recently, the Seventh Circuit in *Northern Grain*, outlined the boundaries of specific personal jurisdiction in a contract case. 743 F.3d at 494. There, the court distinguished *Lakeside Bridge & Steel Co. v. Mountain State Construction Company*, 597 F.2d 596 (7th Cir. 1979), a case finding no personal jurisdiction over the defendant, with *Madison Consulting Group v. South Carolina*, 752 F.2d 1193 (7th Cir. 1985), where the court did find personal jurisdiction. The *Northern Grain* court discussed cases distinguishing and criticizing the *Lakeside* decision, however, the court also emphasized that *Lakeside* is still good law. *Northern Grain,* 743 F.3d at 494. Notably, the *Northern Grain* court described *Lakeside* "as marking something of a borderline for a no-jurisdiction" and that "'when a defendant's contacts with the forum state have been as—if not

more—limited than those of the defendant in *Lakeside*, this court has denied personal jurisdiction.'" (quoting *Madison Consulting*, 752 F.2d 1193 at 1200).

In *Lakeside,* the court found that Wisconsin lacked personal jurisdiction over a West Virginia-based defendant who ordered "structural assemblies" from the Wisconsin-based plaintiff without ever having set foot in Wisconsin. 597 F.2d at 598. The court recognized that although the performance of the contract would take place primarily within the forum state, the contract negotiations and acceptance took place via mail, and "the contacts with Wisconsin...consist[ed] solely of the unilateral activity of" the Wisconsin-based plaintiff; no other circumstances indicated that the West Virginia company purposefully availed itself of the privilege of conducting activities within Wisconsin. *Id.* at 603 (internal quotation marks omitted).

In *Northern Grain,* the court found no personal jurisdiction in Illinois over a Wisconsin defendant where the plaintiff "wasn't actively marketing his grain to [the forum state's] companies; he just happened to get acquainted with [the plaintiff] at the seed-corn trade meeting in Illinois." 743 F.3d at 496. When looking at the parties' contract and the actual course of dealings, the court found that the defendants' task—to grow and deliver grain outside of the forum state—were distinct tasks and did not create "continuing obligations," unlike other contract cases such as the franchise contract in *Burger King* or the insurance contracts in *Insurance Health. See id.* at 495 (citing *Burger King*, 471 U.S. at 480 and *Travelers Health Ass'n*, 339 U.S. at 648). The court also found significant the fact that all preliminary negotiations took place remotely, over the phone, when the defendant was not located in the forum state. *Id.* Finally, and perhaps most notably, the *Northern Grain* court found no personal jurisdiction even when the defendant had contracted with

the plaintiff "from time to time" during a period of approximately nine years while knowing the plaintiff was based in the forum state, Illinois. *Id.* at 496.

Here, the Court finds Stevens's contacts with Wisconsin to be even more limited than those of the defendants in both *Lakeside* and *Northern Grain,* and thus, the Court does not find specific personal jurisdiction. Similar to the defendant in *Northern Grain,* Stevens has never actively marketed, advertised, or sold its products in Wisconsin; Stevens just happened to become acquainted with PES when a third party, the Canadian DND, introduced the companies to each other and then PES initially reached out to Stevens to begin a business relationship.[6] The parties had no prior relationship and Stevens never physically entered Wisconsin for any reason in relation to the contracts at issue. The case against personal jurisdiction is stronger in this case as opposed to the *Northern Grain* defendant who physically traveled to the forum state, Illinois, and made contact with the plaintiff at a seed-corn trade meeting in Illinois. *See N. Grain,* 743 F.3d at 496. These factors weigh against a finding that Stevens purposefully directed its activities towards Wisconsin.

Nor do Stevens's negotiations and actual course of dealings with PES dictate a finding of personal jurisdiction. In looking at the negotiations that took place between the parties prior into entering the NDA and Reseller Agreement, the phrase, "the proof is in the pudding," comes to mind. Indeed, the parties negotiations were so limited and undeveloped that neither party

---

[6]PES emphasizes the fact that Stevens sent the first "written communication" between the parties. (Pl's Opp. at 10). However, PES points to no case law or other argument as to why the Court should find the first *written* communication to be more significant than the telephone conversation where PES initiated contact with Stevens. The Court is not persuaded that the mode of communication should matter at all to its analysis, and instead focuses on the fact that PES first reached out to Stevens.

ever discussed the location from where PES would ship its products—a seemingly important factor which ultimately led to Stevens's alleged breach of the agreement. *(See* Kemp. Decl., Ex. E) (noting that FOB China was a "game ender" for Stevens). The negotiations lasted only approximately two months—from the January 22, 2014, initial PES telephone call until March 25, 2014, when Stevens delivered the executed Reseller Agreement to PES. During that time period, Stevens sent PES approximately only five, relatively short, emails, and the parties made a small number of phone calls to each other (the exact number of phone calls is unclear based on the record). During all negotiations, Stevens was located in Canada and not in Wisconsin, which also weighs against personal jurisdictions. *See N. Grain,* 743 F.3d at 495 (distinguishing cases where parties discussed contracts over the telephone from cases where meetings leading to contract formation were held in the forum state). Given these facts, the Court finds that the parties' negotiations and actual course of dealings were limited and do not support a finding of personal jurisdiction.

Finally, Stevens's contacts with PES were significantly less than the nine-year business relationship between the parties in *Northern Grain*— whereas here the Reseller Agreement involved a term of only one year and Stevens allegedly breached the agreement even prior to the exchange of any goods.[7] *See N. Grain,* 743 F.3d at 496.

---

[7]The Court recognizes that the Reseller Agreement allowed for a renewal of the purchase agreement provided that Stevens met a certain sales volume, however, this portion of the contract was specifically left blank. (*See* Compl., Ex. 1, Docket #1-1). Of course, almost any contract *could* be renewed, but that is not the question before the Court. Based on the facts presented in this case, the Court views the dealings between the parties as a twelve-month agreement with only the potential for a renewal.

Although the court recognizes that the NDA and the Reseller Agreement between the parties both stated that Wisconsin law governed the agreements, this factor, though certainly persuasive to PES's position, is only one among many animating the Court's analysis, and is insufficient to carry the day for PES in this case. *See Burger King,* 471 U.S. at 482 (noting that a choice-of-law provision in a contract, standing alone, is insufficient to confer jurisdiction). In looking at the totality of the circumstances, Stevens had significantly less contacts with Wisconsin than the defendants in *Northern Grain* and *Lakeside,* and thus, the case against personal jurisdiction is even stronger here.

For these reasons, the Court concludes that Stevens has not established the requisite minimum contacts with Wisconsin to be hailed into court here, and thus, PES has failed to meet its burden in establishing a prima facie case of specific personal jurisdiction. Because the Court finds that PES has not established that Stevens had the necessary minimum contacts to establish personal jurisdiction, the Court need not determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King,* 471 U.S. at 476.

4. CONCLUSION

As discussed above, the Court finds that it does not have either general personal jurisdiction or specific personal jurisdiction over Stevens in Wisconsin. As such, the Court will grant Stevens's motion to dismiss and will dismiss this action in its entirety for lack of personal jurisdiction.

Accordingly,

IT IS ORDERED that Stevens's motion to dismiss the complaint (Docket #7) be and the same is hereby GRANTED and this action be and the same is hereby DISMISSED for lack of personal jurisdiction;

IT IS FURTHER ORDERED that Stevens's motions to restrict document (Docket #34) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that PES's motion to restrict document (Docket #30) be and the same is hereby GRANTED; and

IT IS FURTHER ORDERED that PES's motion for discovery limited to jurisdiction (Docket #15) and motion to withdraw motion for discovery limited to jurisdiction (Docket #23) be and the same are hereby DENIED as moot.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of December, 2015.

BY THE COURT:

*[signature]*

J.P. Stadtmueller
U.S. District Judge

Page 18 of 18

Case 2:15-cv-00871-JPS   Filed 12/18/15   Page 18 of 18   Document 37